IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20MJ4203 |
| | ) | |
| Plaintiff, | ) | JUDGE THOMAS M. PARKER |
| | ) | |
| v. | ) | |
| | ) | |
| TANDRE BUCHANAN, JR., | ) | MOTION TO REVOKE ORDER OF |
| | ) | RELEASE |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Scott Zarzycki, Assistant United States Attorney, and hereby files this Motion to Revoke Order of Release of Defendant Tandre Buchanan, Jr.

**I.   Factual Background**

On June 11, 2020, Magistrate Judge Jonathan D. Greenberg signed a criminal complaint charging Defendant, Tandre Buchanan, Jr. with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951.  (R. Criminal Complaint, filed June 11, 2020).  If convicted, the defendant faces a maximum term of 20 years imprisonment.

On June 18, 2020, Magistrate Judge Thomas M. Parker held a detention hearing.  The government proffered 16 exhibits and the Pretrial Services Report, and offered the testimony of Special Agent Williams Hasty of the FBI. (R. Minutes of Proceedings from Detention Hearing, June 18, 2020).

Specifically, the testimony by Special Agent Hasty and the proffered exhibits showed that on May 30, 2020, the defendant participated in the wanton destruction and theft from Colossal Cupcakes located on Euclid Avenue in downtown Cleveland, Ohio.  According to

Agent Hasty, his interview of the witnesses revealed that at approximately 6:30 p.m. the owner of Colossal Cupcakes returned to her store due to an escalating dangerous situation occurring outside on Euclid Avenue. (R. 12: Transcripts, PageID 50). When she arrived, her employees unlocked the door and allowed her inside. (Id.). Once inside, she could hear pounding on her windows, then the sound of what she described as a gunshot followed by the breaking of glass. (Id.). She then described somebody, at least one person came through the window and jumped on the counter in an aggressive manner in front of her. (Id). She also described a cinderblock being thrown through into her store past her head. (Id., PageID 51). According to Agent Hasty, at least two employees described a person in orange clothing enter the store, one employee in particular described someone with both and orange sweatshirt and orange head covering. (Id., PageID 54). Concerned for her own safety and that of her employees, the owner escorted all employees to the back of the store and locked them in the bathroom. (Id.). There she could hear the sound of the damage being done to her business and people moving around. (Id.). They remained barricaded in the bathroom, in fear for their lives, until Cleveland Police Swat Unit arrived 10 minutes later and escorted them to safety. (Id., PageID 51). When they left, one employee noticed that all five tablets used as point of sales machines were missing. (Id., PageID 52).

Prior to running to the back, the owner recorded a brief video on her cell phone. (Id., PageID 55). The video, identified by Agent Hasty as Exhibit 1, captured the front of the store just after the window was broken and depicts a person dressed in a bright orange top and black pants appear to enter. (Id.). Data from the phone revealed the video was taken at 6:38 p.m. (Id., PageID 58).

2

Agent Hasty was also able to obtain photo and video evidence from outside that captured activities occurring nearly simultaneously with what occurred inside the store. Agent Hasty identified Exhibits 2 and 3 as two still photos from a video that began recording at approximately 6:38 p.m. (Id., PageID 56-58). The stills showed a man in orange exiting Colossal Cupcakes through the same window that was shattered. (Id.). Agent Hasty identified Exhibits 4-8 as stills from the same video which clearly showed a man in a bright orange hooded sweatshirt and orange head covering repeatedly smash a metal stool into another window of Colossal Cupcakes. (Id., PageID 58-61). The stool was one of the seats used for customers on the inside of Colossal Cupcakes. (Id., PageID 58-59). While the male in the orange hooded sweatshirt was breaking the window, other individuals can be seen running into the store, going behind the counter, and running out, one with a stolen item taken from the store. (Id., 59-61). Agent Hasty described the video as depicting Euclid Avenue at the time as an area where there was "near constant breaking of glass and looting of businesses." (Id., PageID 61-62).

Video stills from the incident were released to the public through the media in hopes to identify the suspect in orange. (Id., PageID 62). A photograph identified by Agent Hasty as Exhibit 12 was also obtained that showed the same male in orange walking down the street near Cleveland State University holding a deer head trophy taken from Geiger's Sporting Goods store in downtown Cleveland. Within ten minutest the first tip came in that advised the person in orange was Tandre Buchanan. (Id., PageID 62). Agents looked at the defendant's driver's license information and found that his face matched the suspect in orange. (Id.). Agents located a public Instagram account used by the defendant and found a picture where he was wearing the identical bright orange sweatshirt as the male in the video stills of the incident. (Id., PageID 62-

3

63). Within the hour of the media release of the photos, Buchanan's Instagram account profile was changed to private and was no longer viewable by law enforcement. (Id., PageID 63-64).

Agents obtained an arrest warrant for the defendant and took him into custody on June 11, 2020. (R. Criminal Complaint, filed June 11, 2020). A search warrant was also executed where agents attempted without success to locate his clothing and the deer head trophy. (Id., 67-68). During his interview with the Agents, the defendant admitted that it was him in the video smashing the metal stool repeatedly into the window of Colossal Cupcakes. (Id., PageID 64-65). He claimed to be motivated by his belief that the owner of the Colossal Cupcakes financially supported a cause to benefit police officers. (Id., PageID 72). According to Agent Hasty, the defendant was very emotional and agitated and felt strongly about it when describing it. (Id.). He did not admit to going inside the store and claimed he found the metal stool on the sidewalk. (Id., PageID 65, 89). He also claimed that he returned home at approximately 7:00 p.m., just after the photograph was taken of him with the deer head trophy stolen from Geiger's Sporting Goods store. (Id., PageID 65-66). Agents asked specifically if he was anywhere near the City Tap in Cleveland at around 9:30 p.m., where a male in a bright orange hooded sweatshirt and orange head covering was spotted on video, identified as Exhibit 13, near a car that was registered to his brother. (Id., PageID 67). He claimed to not know anything about it. (Id.). He stated he stated that he threw away the sweatshirt because it had blood on it and a hole from a rubber bullet and that he left the dear head trophy on the sidewalk after taking the picture. (Id., PageID 67-68). The following morning, he told Agent Hasty that he had gotten rid of all of it after his father told him to do so. (Id.). Finally, the defendant consented to an analysis of his cell phone. (Id., PageID 69).

4

During the course of the investigation, Agent Hasty obtained additional evidence that showed Buchanan involved in destructive and theft related behavior throughout downtown Cleveland on May 30, 2020. From the defendant's cell phone analysis, Agents recovered a video that showed him in all bright orange approach a revolving door of Huntington Bank located at Public Square, and throw a large object through the glass shattering it. (Id., PageID 69; Exhibits 9 and 10). The defendant is captured on video outside of Geiger's Sporting Goods and inside Heinens grocery store. (Id., PageID 71; Exhibit 11). Both stores were looted. (Id.). Finally, as stated above, a video just outside of City Tap in Cleveland at approximately 9:30 p.m. shows a male dressed in bright orange standing at the trunk of a blue Hyundai registered to his the defendant's brother. (Id., PageID 73; Exhibit 13). City Tap was looted and multiple bottles of Crown Royal, among other things were stolen. (Id.). In defendant's cell phone analysis, Agent Hasty located a text message where Buchanan says he was with his brother at 9:53 p.m. on May 30, 2020. (Id., PageID 74; Exhibit 16). The following day on May 31, 2020, the defendant sent another text message saying "they only had two crown bottles and I sold them both." (Id., PageID 75; Exhibit 15). An analysis of the cell phone GPS data showed the defendant a block away from City Tap just after 9:30 p.m. (Id.). Finally, to sum up his activities on May 30, 2020, the defendant says in a third text message at 11:02 p.m. that evening, "I fucked downtown up." (Id., PageID 74; Exhibit 14).

Magistrate Judge Parker overruled the government's motion for detention and set bond at $20,000, unsecured. (Id., PageID 98). In so ruling, the court presented its findings on the record. Notably, Magistrate Judge Parker relied heavily on the history and characteristics of the defendant, particularly his lack of criminal history and lack of substance abuse issues, his ties to the community, the fact that he was employed, and that pretrial services rated him a PTRA

5

Category 2 risk. (Id., PageID 96-97). The government requested a stay of the release order to allow time to seek review of Magistrate Judge Parker's decision to this Court. (R. 8: Motion for Stay, PageID 26). Magistrate Judge Parker granted this request, and issued a stay on his order of release pending review of the instant motion. (R. 10: Order, PageID ).

The government requests that this Court review the Magistrate Judge Parker's determination, revoke the order of release, and order Defendant Tandre Buchanan detained pending trial.

## II.     Law and Argument

Pursuant to Title 18, United States Code, Section 3145, "If a person is ordered released by a magistrate, or by a person other than by a judge of a court having original jurisdiction over the offense . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1).

The factors that are to be considered regarding detention are outlined in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse,

6

>> criminal history, and record concerning appearance at court proceedings; and
>
> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

Review of these factors weigh in favor of detention. The facts of this case present a particularly egregious form of the offense of interference with commerce by robbery. The defendant, motivated by the belief that the owner of Colossal Cupcakes financially supported a fund to benefit the police, targeted the business and terrified five people when he forcibly entered the business. (R. 12: Trans., PageID 72). Video and testimony show that after a window was broken out and a cinderblock was hurled through the store, the defendant appeared to be the first to enter the store. (Id., PageID 50-54). The defendant then exited and repeatedly smashed the next window with a chair taken from inside the store. (Id., PageID 58). The activities of the defendant enabled others to simultaneously go inside and loot the store while the owner and employees remained locked in the bathroom, afraid for their lives. (Id., PageID 58-61).

The nature and circumstances of the instant offense involve repeated and exceptionally dangerous behavior that continued throughout day. Evidence shows that the defendant was either present inside, or actively participating in the destruction and theft, of multiple businesses in downtown Cleveland that were looted. The defendant began at the Justice Center and made

7

his way to Public Square. Once there, defendant is seen in a video heaving a large object through the window of a revolving door of Huntington Bank. (Id., PageID 69). A person in all orange is visible going inside Colossal Cupcakes and exiting, then the defendant in all orange is clearly visible destroying a large front window of the business. (Id. PageID 58-61). Photos were taken of defendant inside Heinen's grocery store as well as outside of Geiger's Sporting Goods. He is seen in a photo walking down the street near Cleveland State holding a deer trophy proudly over his head. (Id., PageID 62; Exibit 12). The trophy was taken from Geiger's downtown where it had been for over 80 years. (Id.). Both stores were looted and damaged. (Id., PageID 71). Finally, video evidence shows defendant outside of City Tap later that evening. (Id. PageID 67; Exhibit 13). City Tap was also looted damaged. (Id.). After the damage and the looting, the defendant gloated that he "fucked downtown up." (Exhibit 14).

The weight of the evidence also weighs against the defendant's release. When reviewing the weight of the evidence against the person, it is important to note that this "factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." United States v. Stone, 608 F.3d 939, 949 (6th Cir. 2010), citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985) (noting that the weight of evidence against the person "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community."). As noted above, the defendant poses substantial risk to the safety of the community as demonstrated by the facts of the case. The defendant targeted Colossal Cupcakes due to a personal issue with the owner, then proceeded to terrify her and her employees with his actions on May 30. Additionally, he continued throughout the day, taking part in stealing and damaging property from various businesses all over Cleveland.

8

In issuing the court's findings in favor of releasing the defendant, Judge Parker relied heavily on the history and characteristics of the defendant less on the facts and circumstances of the offense charged. (Id., PageID 96-97). The government acknowledges that the defendant has no criminal record. However, once the investigation of this case became public, the defendant's actions suggest that he was willing to take active steps to avoid detection for this offense. When his picture was made available to the public through the media, the defendant immediately switched Instagram his profile to private. (Id., PageID 63). When the agents searched his home, his sweatshirt, head covering, pants, shoes, and the deer trophy were missing. (Id., PageID 67-69). And when given the opportunity to provide a complete and truthful statement about what occurred, the defendant left out details or was untruthful. (Id.). He failed to tell Agents during the interview that he was ever inside of Colossal Cupcakes, but video shows a man in a bright orange hooded sweatshirt entering first, and then another video shows him exiting through the same broken window, then proceed to smash the other window. (Id., PageID 65). He claimed he picked up the metal stool from the sidewalk. (Id., PageID 65, 89). However, nowhere in the video is a metal stool visible on the sidewalk prior to the defendant using it to break the window. (Id., PageID 59). The remaining metal stools are visible in the video inside of Colossal Cupcakes while the defendant was breaking the window. (Id.; Exhibit 4). He claimed he picked up the dear head trophy from the street near Cleveland State where the picture was taken and put it back down again, however, according to the testimony of Agent Hasty, video evidence shows the defendant blocks away near Playhouse Square carrying the same deer head trophy. (Id., PageID 68). He said that he went home at approximately 7:00 p.m. on the evening of the protests. However, evidence suggests that he was back in downtown Cleveland near City Tap at

9

9:30 p.m. or later. (Id., PageID 67). When questioned about the video showing a male in orange near a car that listed to his brother, he denied knowledge of it. (Id.).

Despite the above, it remains the government's position that regardless of the defendant's history and characteristics, his behavior throughout the day on May 30, 2020 demonstrates the defendant poses as danger to the victim and her business that he targeted, as well the community if released. Judge Parker discussed some of the facts of the offense in his order, finding the fact that the occupants of the business were terrified and sought shelter as a result of the incident supported the government's motion for detention. (R. 10: Order, PageID 31). However, the court also found that the government proffered no evidence that the defendant interacted directly with the persons in the store or was aware that people were present in the store at the time of the offense. (Id.). However the testimony showed that soon after the owner of Colossal Cupcakes was allowed in by employees, the glass windows were broken and individuals began making entry. (Id., PageID 50-50). The owner's cell phone video, which was recording just prior to her retreat to the back of the store with her employee's, shows a male in bright orange entering the business. (Id., PageID 55; Exhibit 1). Two employees reported seeing a male in orange enter the store and one of them was able to describe him with some particularity. (Id., PageID 54). After entering the store, in view of two employees and recorded by the owner, the defendant exits the same broken window and proceeds a different with the metal stool. (Exhibits 2-4). Further, the defendant admitted that he was the male in orange as see on video smashing the window of the store. (Id., PageID 64-65). Surely being seen inside the store by two employees and recorded on video by another would amount to some degree of circumstantial evidence that defendant was aware people were in the store while committing the instant offense and that he was therefore aware of the danger that he presented to the victims. As such, the defendant's history and

10

characteristics are outweighed by the nature of and circumstances of the offense and danger the defendant poses to the community.

### III.     Conclusion

Based on the foregoing argument, the Government requests that this Court review Magistrate Judge Parker's release order and find that there are no conditions or combination of conditions that would reasonably assure the safety of the community.

    Respectfully submitted,

    JUSTIN E. HERDMAN
    United States Attorney

By:   /s/ Scott Zarzycki
    Scott Zarzycki Kolansky (OH: 0072609)
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3971
    (216) 522-7358 (facsimile)
    Scott.Zarzycki@usdoj.gov