IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:20CR388 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| TANDRE BUCHANAN, | ) | GOVERNMENT'S MOTION TO |
| | ) | INTRODUCE EVIDENCE |
| Defendants. | ) | INEXTRICABLY INTERTWINED OR IN |
| | ) | THE ALTERNATIVE AS OTHER ACTS |

Now comes the United States of America, by and through its counsel, Bridget M. Brennan, Acting United States Attorney, and Scott Zarzycki, Assistant U. S. Attorney, and hereby moves to admit additional evidence of uncharged conduct. The government seeks to introduce evidence which either is inextricably intertwined with the charged offenses, and/or conduct of other acts that is evidence of the motive and intent of committing theft offenses.

This case arises from a two Count indictment, filed on July 23, 2020, alleging one Count of Interference with Commerce by Robbery (Count 1), and one count of Tampering with Evidence (Count 2). There is additional uncharged conduct which occurred within the timeframe of the crimes charged in the indictment which the government respectfully moves this Court to deem said evidence as inextricably intertwined evidence with the charged conduct as set forth in the indictment. The government also views defendant's post-indictment conduct as evidence properly admitted under Rule 404(b) of the Federal Rules of Evidence to show his intent.

## I. UNDERLYING FACTS FOR THE CHARGE OF INERFERENCE WITH COMMERCE BY ROBBERY

On May 30, 2020, the defendant, Tandre Buchanan, joined the crowds gathered in downtown Cleveland to protest the murder of George Floyd in Minneapolis, Minnesota. A large group gathered around the Justice Center Complex on Lakeside Avenue. What began as a peaceful protest later deteriorated into destruction of property, vandalism, thefts and a few arson incidents throughout downtown Cleveland, including around the Justice Center. Buchanan moved with many others to Public Square and then to Euclid Avenue where multiple incidents of vandalism and theft from businesses then continued along Euclid Avenue.

At approximately 6:30 p.m., Buchanan came to Colossal Cupcakes located at 528 Euclid Avenue. Evidence at trial will show that he broke one large window, entered through the opening, and briefly encountered the owner and her employees. They quickly ran to a bathroom for shelter, locked the door, and called the police. Buchanan removed a chair from the business and exited through the same window. Using the chair, Buchanan is seen on a professional's video (who was downtown recording the day's events) wearing a bright orange jacket, head covering and shoes, repeatedly smashing a second window, striking and hurling the chair at the window until it finally shattered and fell out. Multiple individuals are also seen in the same video running into the business through the first broken window and running out stolen items, all while Buchanan was smashing the second window.

Buchanan then appears on the same video to walk east down Euclid Avenue, only to turn around and walk back toward the direction of Colossal Cupcakes again. At that point the videographer directed his camera away to another location. The full video depicts Euclid Avenue at the time as an area where there was near constant breaking of glass and looting of multiple businesses.

Text messages about the incident were later recovered from Buchanan's phone. A person sent a text to Buchanan's phone asking, "what the hell they do with all the cupcakes?" The text message reply from Buchanan's phone was "man I was giving them out." (Exhibit 1).

The Cleveland Swat team eventually arrived at Colossal Cupcakes and escorted the owner and her employees from the business. It was at that time that the owner saw that her business was destroyed, and numerous items of inventory stolen, as well as the iPads she used as cash registers.

Buchanan was ultimately identified and arrested based on multiple identifications made from still photos of the professional video that was released to the public, along with other photos of Buchanan. (Exhibits 2-5).

## II. EVIDENCE OF UNCHARGED CONDUCT

During the course of the investigation, agents obtained additional evidence that showed Buchanan was involved in destruction and thefts throughout downtown Cleveland on May 30, 2020 during same time period he committed his offense at Colossal Cupcakes.

From the defendant's cell phone analysis, Agents recovered a video that showed Buchanan in all bright orange jacket, head covering and shoes, approach a revolving door of Huntington Bank located at Public Square and throw a large object through the glass shattering it. (Exhibits 6-7).

Geiger's Sporting Goods store located at 1020 Euclid Avenue reported damage and theft of multiple items during the protest on May 30, 2020, including the theft of thousands of dollars in clothing, outdoor gear and a mounted deer head that had been in the business for years. Buchanan was captured in a photo on a Cleveland sidewalk wearing the same bright orange jacket, holding a mounted deer head over his head. (Exhibit 5). He was later questioned about this photograph and identified himself as the male in the photo. In an interview with FBI agents,

3

Buchanan claimed he found it on the sidewalk, posed for a picture with him holding it over his head, and put it back down on the sidewalk. In a text message sent to Buchanan's phone he was asked what he got out of the cupcake shop and his phone responded in a message, "talking about window shopping." The response from the other person was "man fuck window shopping, you went shopping." The person then texted again to Buchanan's phone asking, "let me see what all you get." The response from Buchanan's phone was "I got hella liquor, that mannequin, and a raw ass deer head." The person asked, "deer head?" Buchanan's phone responded, "a deer head for the studio." (Exhibit 8). The deer head was not recovered during a search warrant of defendant's home.

Also on May 30, 2020, at approximately 8:30 p.m., City Tap Bar and Restaurant located on 748 Prospect Avenue in Cleveland was broken into and looted. Chairs were stolen from the restaurant, brought outside, and thrown back through the windows. Over $6000 worth of liquor bottles were stolen. In an Instagram message exchange with another individual just one day after the protests, Buchanan's Instagram account sent a message stating, "they only had 2 Crown bottles and I sold them both." The message response was "Damn lml." Buchanan's account then stated, "We fucked Cleveland up." (Exhibit 9). A male in a bright orange jacket and head covering was captured in a photo taken outside of City Tap appearing to be loading the trunk of a vehicle. (Exhibit 10). The license plate on the vehicle came back to a registered owner who is Buchanan's brother. In defendant's cell phone analysis, Agent Hasty located a text message where Buchanan says at 9:53 p.m. on May 30, 2020 that he was with his brother. (Exhibit 11). An analysis of the cell phone GPS data showed the defendant a block away from City Tap just after 9:30 p.m.

### III. LAW AND ARGUMENT

#### A. EVIDENCE INEXTRICABLY INTERTWINED

A district court may admit uncharged background evidence as long as it is "inextricably intertwined" with the underlying offense. United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000). Intrinsic acts "are part of a single criminal episode," United States v. Barnes, 49 F.3d 1144, 1149 (6th Cir. 1995), meaning they "ha[ve] a causal, temporal or spatial connection with the charged offense," Hardy, 228 F.3d at 748. Courts may admit evidence via this route if it (1) "is a prelude to the charged offense"; (2) "is directly probative of the charged offense"; (3) "arises from the same events as the charged offense"; (4) "forms an integral part of a witness's testimony"; or (5) "completes the story of the charged offense." Id. Intrinsic acts may be admitted when evidence "provides background information, establishes a nexus between individuals, or completes the story of the charged offense." United States v. Gibbs, 797 F.3d 416, 424 (6th Cir. 2015). This evidence does not, however, implicate Fed. R. Evid. 404(b) when evidence of prior acts is "part of a continuing pattern of illegal activity" or is "inextricably intertwined" with the indicted crime. Barnes, 49 F.3d at 1149.

See United States v. Cody, 498 F.3d 582 (6th Cir. 2007) (testimony that defendant's motive to commit armed bank robbery was to support drug use and pay off drug debts properly admitted; court determined defendant's drug habit was inextricably intertwined with bank robbery); United States v. McGee, 510 F. App'x 377 (6th Cir. 2013) (testimony of prior uncharged robbery properly admitted where defendant planned to use the firearms stolen during uncharged robbery to commit charged robbery and drug conspiracy); and United States v. McNeal, 40 F. App'x 164 (6th Cir. 2002) (testimony that witness sold drugs on behalf of defendant on occasions other than those charged properly admitted as 'prelude to charged

offense' to explain relationship of witness and defendant, how defendant came to be under investigation, and why witness agreed to cooperate and testify against defendant).

Of course, the admission of any evidence is subject to its relevancy. Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Even if relevant, evidence must also be more probative than prejudicial. Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" Gibbs, 182 F.3d 408, 430 (6th Cir. 1999) (quoting United States v. Bonds, 12 F.3d 540, 567 (6th Cir. 1993)).

In this case, the defendant's intrinsic acts of destruction and theft throughout downtown Cleveland on May 30, 2020 are part of a single criminal episode and they have a causal, temporal, and special connection with the charged offense. Buchanan committed these acts that involve the same type of criminal activity during the same period of time he was in downtown Cleveland, both before and after the charged offenses. The defendant's other acts also complete the story of the charged offense. Buchanan did not just simply go into downtown Cleveland with the isolated idea that he was going to rob Colossal Cupcakes. What began as Buchanan's participation in a protest soon evolved into Buchanan's crimes of theft and damage to property involving multiple businesses. This evidence is relevant to the charged conduct because it will assist the tryer of fact in making sense of the evidence supporting the charged criminal conduct.

Further, some of the evidence of uncharged acts, such as the photo of him holding the deer head, was used to identify the defendant.

B.     EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS

While the government asserts this afore-mentioned evidence would be considered 'inextricably intertwined' rather than 'other acts' evidence, it provides the Court with a 404(b) analysis by ways of comparison. Fed. R. Evid. 404(b) provides:

> (b) Crimes, Wrongs, or Other Acts.
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>
> (B) do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

The Sixth Circuit has established a three-part test for determining if evidence is admissible under Rule 404(b). First, the district court must decide whether the proponent has demonstrated that the other act in question actually occurred. Hardy, 228 F.3d at 750. The district court need not make a finding that the proponent proved the other act by a preponderance of the evidence; "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S. 681, 685 (1988). Second, the proponent must identify a specific purpose, other than the defendant's character, for which the evidence is offered, and the district court must determine

whether this identified purpose is "material" or "at issue" in the case. United States v. Merriweather, 78 F.3d 1070, 1076–77 (6th Cir. 1996). Finally, the court must engage in a Rule 403 analysis and determine whether "the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." Id. at 1077. After conducting this analysis, if the evidence is admitted, the district court "must 'clearly, simply, and correctly' instruct the jury as to the specific purpose for which they may consider the evidence." Id. (quoting United States v. Johnson, 27 F.3d 1186, 1193 (6th Cir. 1994)).

There is no question the first element is met; that the acts actually occurred. Defendant's own cell phone contained a video which depicted him causing the damage to Huntington Bank's revolving door shattering it prior to reaching Colossal Cupcakes. It is also clear that Buchanan purposely took a deer head that didn't belong to him. He is seen in a photo clearly holding it up. He admitted to agents that it was him in the picture holding it. Although he told agents he put it back down on the ground, he indicated in a text message with another person that he intended it for decoration in his studio. Finally, there is evidence in the form of photos, text messages, and GPS data that show that Buchanan was in the area of City Tap Restaurant during the looting and also participated.

This is material to contested elements of the offense of Hobbs Act Robbery; whether he intended to take or obtain property in the custody and presence of employees of Colossal Cupcakes on May 30, 2020. The other acts of evidence show that Buchanan's intent was not simply to demonstrate. While protesting may have been his original plan, that intent evolved into the opportunistic motive to vandalize and steal from multiple businesses in downtown Cleveland. Colossal Cupcakes was only one of those businesses.

Other acts evidence is admissible if specific intent is a statutory element of the offense. United States v. Spikes, 158 F.3d 913, 930 (6th Cir. 1998). The instant crimes charged have an element of specific intent. "In prosecuting specific intent crimes, prior acts evidence may often be the only method of proving intent. Where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise." United States v. Johnson, 27 F.3d 1186, 1192 (6th Cir. 1994). The evidence of vandalism and theft during the same time period in the offense alleged in the indictment is highly probative of specific intent.

To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is "substantially similar and reasonably near in time" to the specific intent offense at issue. United States v. Blankenship, 775 F.2d 735, 739 (6th Cir. 1985). There can be no question that these acts of theft were reasonably near in time, within one or two hours of the charged offense. The conduct involved similar behavior, vandalizing, and stealing property from businesses. In the theft from City Tap, the facts reported regarding removing chairs from the business and using them to further destroy it are nearly identical to the facts relating to the robbery of Colossal Cupcakes. There is evidence that Buchanan unlawfully obtained the property from a total of three separate businesses, including Colossal Cupcakes.

The final inquiry the Court must make is whether the other acts are probative of the permissible uses, and if the probative value is substantially outweighed by the danger of unfair prejudice. Essential to this balancing inquiry is the intended purpose for introducing the evidence. The jury instructions should provide only those specific intended uses for the evidence. United States v. Davis, 547 F. 3d 520 (6th Cir. 2008). The Sixth Circuit Pattern Jury Instructions do not provide definitions for the potential uses of evidence, i.e. 'motive,' 'intent' or

'plan.' United States v. Johnson, 27 F.3d 1186 (6th Cir. 1994) provides substantial guidance in the proper use of motive, intent, identity and knowledge. In the instant case, the government plans on using the evidence of other acts strictly for the purpose of establishing Buchanan's intent when committing the offense upon Colossal cupcakes. A proper limiting instruction will provide guidance to the jury alleviating the potential for improper consideration of the evidence.

## IV. CONCLUSION

Under either 'inextricably intertwined' or 'other acts,' the Court must conduct a balancing test under FRE 403. The government submits that the evidence is inextricably intertwined with the instant charged offenses. It is probative of the material issues that will be presented at trial. The government seeks to introduce specific facts without sensationalizing the acts. These facts are woven in the conduct charged and committed by the defendant. The Court may also consider the evidence as other acts which are probative to the motive and intent.

        Respectfully submitted,

        BRIDGET M. BRENNAN
        Acting United States Attorney

By:   /s/ Scott Zarzycki
       Scott Zarzycki (OH: 0072609)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3971
       (216) 522-8355 (facsimile)
       Scott.Zarzycki@usdoj.gov