# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.    1:20 CR 388 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | |
| TANDRE BUCHANAN, | RESTITUTION ORDER |
| Defendant. | |

This matter comes before the Court on the Government's request for restitution. The Government filed a Sentencing Memorandum, a Supplemental Restitution Memorandum, and a Notice reducing the amount requested for restitution. (ECF #69, 85, 97). The Defendant filed his own Sentencing Memorandum challenging the restitution request, and filed a Response to the Government's Supplemental Restitution Memorandum. (ECF #70, 89).

## PROCEDURAL HISTORY

On May 30, 2020, a large group of individuals gathered in downtown Cleveland to protest the death of George Floyd at the hands of a Minneapolis police officer. Following the protests, the defendant and other individuals began rioting and looting local businesses, resulting in the destruction of property, vandalism, theft, and incidents of arson. Colossal Cupcakes was one of the businesses that was vandalized and looted. The Defendant was the first to breach the business, breaking a front window and allowing looters to enter. He continued breaking windows while looters entered the store and began removing and destroying property. He also

removed a stool, and later told a friend that he was handing out cupcakes. During this time employees in the store were threatened, and ending up locking themselves in the bathroom to protect themselves. They were eventually escorted out of the store by the Cleveland Police Department SWAT team. The Defendant was caught on camera, and was ultimately identified and arrested. As a result of the damage, Colossal Cupcakes had to repair the structure of the store, as well as purchase new equipment, fixtures, supplies, and decorations. The business had to be closed for an extended period of time while repairs and construction were complete.

Following a jury trial, Mr. Buchanan was convicted on one count of Interference with Commerce by Means of Robbery in violation of 18 U.S.C. §1951(a) and 2, and one count of Tampering with Evidence in violation of 18 U.S.C. §1512(c)(1). The parties filed a joint motion to bifurcate sentencing from the determination of restitution, and the Court granted that motion. (ECF #71, 72). Mr. Buchanan was sentenced on March 23, 2022 to a term of 48 months in the Bureau of Prisons, to be followed by a three year term of supervised release. Restitution was ordered in an amount to be determined. Mr. Buchanan filed a Notice of Appeal. (ECF #76).

The Government now seeks a restitution order in the amount of $228,887.61. This amount is comprised of $39,091.61 in construction costs attributable to the cost of replacing items and repairing damage done to the victim's business during the vandalism and looting, as well as $189,796 in lost profits for a period of four months when the business was closed to complete those repairs.

## DISCUSSION

Federal courts possess "no inherent power to award restitution." *United States v. Evers*,

669 F.3d 645, 655 (6th Cir. 2012). Restitution may only be ordered "when and to the extent authorized by statute." *Id.* Through the passage of the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A, Congress has not only authorized, but mandated restitution for various categories of harm, including "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense." 18 U.S.C. §3663A(b)(1). The parties agree that this case involved an offense that resulted in damage to or loss or destruction of the victim's property. They disagree, however, on the scope and value of the property that is attributable to the Defendant's conduct and, therefore, recoverable under the restitution act. The Government seeks restitution for all of the damage that occurred to the victims property during the riot, as well as lost profits when the business was shut down for repairs. The Defendant does not challenge the amount of the expenses incurred by Colossal Cupcakes,[1] as a result of the looting and damage that occurred during the May 30, 2020 riot. Rather, Mr. Buchanan argues that restitution for lost profits is not authorized by the MVRA, and that he should only be held responsible for the $5,000.00 repair cost for the windows that he actually broke.

A. Direct Construction Costs

The MVRA dictates that "in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense," the order of restitution shall require the

---

[1] Defendant calculated the amount of direct construction (repair) costs to be more than what the Government is actually seeking. Under the Defendant's calculation, the amount of construction costs supported by the documentation provided by the victim was $47,482.56. Although it had originally submitted a higher number, the Government is ultimately seeking only $39,091.61 in direct construction (repair/replacement) costs.

defendant to "pay an amount equal to – the greater of – the value of the property on the date of the damage, loss or destruction; or the value of the property on the date of sentencing. . . ." 18 U.S.C. §3663A(b)(1)(B). The statute is silent on how to calculate the value of the property, or how to identify the scope of the property at issue, though it does dictate that courts should "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A).

In this case Mr. Buchanan was convicted of interference with commerce by means of robbery. During the commission of the offense, he broke the windows to the victim's business, allowing looters and rioters into the store and resulting in damage and destruction of property well beyond damage to the windows he, himself, admits to breaking. He committed the offense in the midst of a riot, knowing that breaking the windows would result in the looting and vandalism of the victim's business. He also continued to break windows, creating even larger access points into the business, knowing that other individuals were contemporaneously using that access to enter the store and cause damage to the victim's property.[2] Because the damage to the store was property damage, and the damage done by the looters and vandals was a direct and expected result of Mr. Buchanan's offense, he is responsible for restoring the property to its value on the date of the damage and destruction. In this case, that value is determined by the cost of replacing and repairing the damaged property.

---

[2]When the offense is part of a conspiracy or other pattern or course of conduct, the Defendant is liable for damages resulting from the entire course of conduct, not just from his individual conduct. *See, United States v. Bogart*, 490 F. Supp.2d 885. Though Mr. Buchanan was not charged with conspiracy, the evidence at trial shows that he not only expected, but intended that other looters and vandals enter and cause damage to the business.

The Government bears the burden of proving the amount of each victim's loss by a preponderance of the evidence. *Id.* § 3664(e). "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). This applies to restitution as well as length of sentence. The Government has provided sufficient evidence, included as exhibits to its Supplemental Restitution Memorandum, to establish the amount of loss by a preponderance of the evidence. (ECF #85, 87). Further, that evidence has sufficient indicia of reliability to be accepted, whether or not it would have been admissible at trial.

Ms. Kandah, the owner of Colossal Cupcakes has provided receipts and a sworn statement attesting to the accuracy and necessity of the "direct construction costs" sought by the government in restitution. Although the Defendant argues that he should not be responsible for the these costs, he has not contested that these expenditures were necessary and reasonable in order to restore the victim's property back to the value it held prior to the offense. The Court, therefore, finds that direct construction costs in the amount of $39,091.36 should be included in the restitution order.

B. <u>Lost Profits</u>

The Government also seeks to include $189,796 in lost profits in the restitution order. Defendant argues that lost profits are not recoverable under the MVRA. The MVRA neither explicitly permits nor explicitly prohibits the inclusion of lost profits in a restitution order for an

5

offense causing property damage. Circuits vary on whether they allow the inclusion of lost profits in their restitution orders in such cases. The Tenth, Eighth, Third and Second Circuits have all upheld restitution awards that included lost profit, lost wages, or other opportunity costs not explicitly listed within the MVRA. *See, e.g., United States v. Milstein*, 481 F.3d 132, 136-37 (2d Cir. 2007); *United States v. Chalupnik*, 514 F.3d 748, 755 (8th Cir. 2008); *United States v. Wilfong*, 551 F.3d 1182, 1183-87 (10th Cir. 2008); *United States v. De la Fuente*, 353 F.3d 766, 768-73 (9th Cir. 2003); *United States v. Quillen*, 335 F.3d 219, 221 (3d Cir. 2003). On the other hand, the Fourth and Fifth Circuits have explicitly found that lost profit amounts should not be included in restitution awards under the MVRA. *See, e.g., United States v. Mitchell*, 876 F.2d 1178, 1183 (5th Cir. 1989); *United States v. Sharp*, 927 F.2d 170, 174 (4th Cir. 1991).

The Sixth Circuit has not explicitly ruled on whether lost profits can be included in restitution awards for offenses resulting in property loss or damage, however, Defendant admits that this Circuit "did permit restitution that contemplated some lost profits in *United States v. Lively*, 20 F.3d 193 (6th Cir. 1994). In *Lively,* the Sixth Circuit ordered restitution for stolen items. Rather than valuing the items at their replacement cost to the victim, it valued the items at their retail price, thus incorporating the loss of profit that the victim could have made on those items had they been able to sell them as originally contemplated. The Court reasoned that part of the victim's loss was that " they no longer had this merchandise to sell at the retail price level." *Id.* at 202.

In coming to its decision, the Sixth Circuit acknowledged the purpose of restitution and the legislative history behind the restitution statutes:

> The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the

6

>sanctioning power of society does to punish the wrongdoers, it should also insure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being.

S. Rep. No. 97-532, at 30 (1982), as reprinted in 1982 U.S.C.C.A.N. 2515, 2536. Essentially, the Sixth Circuit (along with the other Circuit Courts that have allowed the inclusion of lost profits) recognized that restitution cannot address the full amount of the victim's losses if lost profits are not taken into consideration.

The MVRA mandates the imposition of restitution as part of the sentence of the defendant, and requires the court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). Accepting the Sixth Circuit's perspective that consideration of lost profits is necessary to determining the full value of a victim's losses, this Court will consider the victim's claim for lost profits when determining the appropriate restitution amount.

In order to be included in the restitution order, damages must have a direct causal connection to the offense of conviction. Most circuits agree that consequential damages cannot be included in a restitution order, although the Sixth Circuit has not yet definitively weighed in on this question. Defendant argues that lost profits should be considered consequential damages, but this in not always the case. Consequential damages are "losses that do not flow directly and immediately from an injurious act but that result indirectly from the act." Black's Law Dictionary (8th ed. 2004). The test for whether an expense is direct or consequential is whether it was a reasonably foreseeable consequence of the defendant's conduct. *Bogart*, 490 F.Supp. at 894.

The Court finds that it was reasonably foreseeable when Mr. Buchanan broke the windows in the midst of a riot, that he would be allowing looters and vandals into the victim's business. Further, based on the evidence presented at trial, including the fact that he continued breaking windows while the destruction and damaging of the victim's property was on-going, and bragged about giving away the victim's goods, the Court finds that he actually intended for this damage and destruction to take place. Further, it was reasonably foreseeable that committing, encouraging and facilitating this damage would lead to at least a temporary closing of the victim's business, resulting in lost profits. No reasonable person could have broken out the windows of a storefront, in the midst of a riot, surrounded by other looters and vandals, and not expected the business to suffer significant property damage and lost profits. Therefore, the lost profits sought by the Government in their request qualify as direct damages flowing directly and immediately from Mr. Buchanan's criminal actions. The victim cannot be fully restored or otherwise compensated for their full losses if they are not compensated for those lost profits. For these reasons, the Court finds that, under the specific facts of this case, lost profits can and should be included in the restitution order in order.

As noted above, specific findings in the calculation of restitution are not required, so long as the information relied on has a "sufficient indicia of reliability" to support "the probably accuracy" of the restitution amount. *United States v. Jackson-Randolph*, 282 F.3d 369, 386 (6th Cir. 2002). In this case, the victim submitted a Victim Impact Statement attesting to the costs and included documentation supporting her lost profit calculations. Further, the Government reviewed her calculations and reduced the compensable period of closure to the duration that should have been reasonably foreseeable to the Defendant based on the nature of his criminal

acts.  The costs sought were narrowly chosen to represent only those that were absolutely necessary to put the victim back in the position she would have been in had the criminal conduct not occurred.  The amount of $189,796.00 in lost profits represents the average monthly profit of the business (averaging over the preceding year), for a period of four months, which is the time it should have reasonably taken to restore the property to its pre-damaged state

## CONCLUSION

For good cause shown, it is hereby ordered that Defendant, Tandre Buchanan Jr. shall immediately pay restitution in the amount of $39,091.61 in repair /replacement or "construction costs", and $189,796 in lost profits, for a total amount of $228,887.61 to the United States Clerk of Courts, to be distributed to Colossal Cupcakes, the victim in the above-captioned case.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: August 1, 2022